UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CARMEN R. MELENYZER,<br><br>    Plaintiff,<br><br>v.<br><br>HOUSING AUTHORITY OF THE CITY OF SAN ANTONIO, HENRY ALVAREZ, In His Official Capacity as Chief Executive Officer of the Housing Authority of the City of San Antonio, and DEBORAH A. FLACH, Individually and in her Official Capacity as Vice President of the Section 8 Housing Assistance Programs,<br><br>    Defendants. | CIVIL NO.  SA-06-CA-185-FB |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   Hon. Fred Biery
    United States District Judge

Pursuant to the Order of referral of defendants' May 1, 2006 motion to dismiss based on qualified immunity to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(i)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

---

[1] Docket no. 13.

## I. JURISDICTION

The Court has federal question jurisdiction. 28 U.S.C. §§ 1331 and 1343.

## II. PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS

Carmen R. Melenyzer ("plaintiff" or "Melenyzer") initiated this lawsuit on March 2, 2006, alleging six federal causes of action against defendants, the Housing Authority of the City of San Antonio ("Housing Authority"), its chief executive officer, Henry Alvarez ("Alvarez"), in his official capacity, and its Vice President of the Section 8 Housing Assistance Programs, Deborah A. Flach ("Flach"), in her official and individual capacities.[2] More specifically, the complaint alleges plaintiff applied for a Section 8 Housing Choice Voucher housing subsidy on or about May 19, 2005, requesting a disability preference, and asking to be placed on the waiting list to complete her application for this program administered by the Housing Authority. When plaintiff was informed she had been selected from the waiting list to complete her application for a determination of eligibility, plaintiff contacted the Housing Authority and made an appointment for July 11, 2005.[3] On July 11, 2006, defendant appeared for the appointment, with a care giver, Rose Lopez, but needed to wait until her son, Russell Melenyzer, arrived for the appointment, as all family members 18 and older were required to be present at the interview.[4] Plaintiff developed

---

[2] Docket no. 1.

[3] Id. at 3. Plaintiff was told that an appointment had already been made for her on June 20, 2006, which she had failed to keep. Plaintiff indicated that she had not received any notice of that appointment and the July 11 appointment was scheduled.

[4] Id., exhibit P-2.

a nose bleed and left before the appointment.[5] The care giver later faxed to the Housing Authority office a note explaining that plaintiff had developed a nose bleed and left to obtain medical attention.[6] The next day and on other later occasions, plaintiff called to scheduled another appointment, but was told she could not.

On November 23, 2005, the Housing Authority sent plaintiff a letter, signed by Anthony J. Pena, Assistant Vice President for the Housing Assistance Program, indicating her name had been removed from the Section 8 waiting list because she had missed two scheduled interviews, on June 20 and on July 11, 2005.[7] The letter also informed plaintiff that she could be reinstated to the waiting list if: (a) it was determined that her lack of response "was due to circumstances beyond your control," (b) plaintiff provided documentation, such as a note from a medical provider or other third party confirmation to verify why she could not keep the appointments and complete her application, and (c) plaintiff paid the outstanding balance of $416.60 owed from the time plaintiff resided at the Castle Point Apartments.[8] Apparently on January 3, 2006, plaintiff's attorney wrote a letter to Mr. Pena at the Housing Authority "to request an accommodation under

---

[5] Id., exhibit P-3. Defendants allege plaintiff arrived for the appointment, her son was not yet there, so plaintiff was given some paperwork to complete while she was waiting; when the clerk next looked for plaintiff, plaintiff was gone.

[6] Id.

[7] Id., exhibit P-4. The Housing Authority letter indicated that it had received a call from plaintiff after the June 6, 2005 letter, scheduled the June 20, 2005 appointment and then the appointment on July 11, 2005.

[8] Id.

the ADA" regarding the reinstatement of plaintiff's name on the waiting list.[9] The letter provided a doctor's verification dated October 13, 2005 indicating that plaintiff had been treated for a nose bleed on July 11, 2005 at approximately 10:30 a.m., a copy of a notice from the Social Security Administration to verify plaintiff was receiving SSI benefits, and asked the Housing Authority to make "reasonable accommodations under the ADA, and reinstate Ms. Melenyzer to her previous position at the top of the Section 8 Waiting List so that she can complete her eligibility certification."[10] Plaintiff's attorney copied defendant Alvarez with the letter.

On January 6, 2006, the Housing Authority, in a letter signed by defendant Flach, informed plaintiff's counsel that the Housing Authority had reviewed plaintiff's file and determined that plaintiff's "failure to make either eligibility appointment prohibits her from reinstatement to the waiting list," and because plaintiff "had her assistance terminated on February 13, 2003, she is ineligible for reconsideration in the program for five years."[11] Because plaintiff was a "non-applicant" and was not an applicant on the waiting list, the Housing Authority had determined it was "not obligated to provide reasonable accommodations at this juncture."[12]

Based on the factual allegations and averments in the complaint, plaintiff alleges six causes of action, alleging:

---

[9] Id., exhibit P-5. The court copy of plaintiff's counsel's letter does not bear a date, but the responding letter from the Housing Authority indicates the letter was faxed to it on January 3, 2006. Id., exhibit P-8.

[10] Id.

[11] Id., exhibit P-8.

[12] Id.

    (1) a violation of 42 U.S.C. § 1983 based on defendants' failure to follow federal regulations at 24 C.F.R. § 982.204(c)(2) which require a public housing authority to "reinstate the applicant in the family's former position on the waiting list" for housing if the applicant did not respond to requests for information due to a disability of a member of the applicant family;

    (2) a violation of 42 U.S.C. § 1983 based on defendants' "policy and/or practice of failing to provide notice and an opportunity to be heard to applicants who are removed from the Section 8 Waiting List," including plaintiff, in violation of plaintiff's due process rights guaranteed under the Fourteenth Amendment;

    (3) a violation of Title II of the Americans With Disabilities Act ("ADA") based on defendants' failure to provide a reasonable accommodation to plaintiff in her attempt to gain acceptance into the Section 8 housing assistance program and the waiting list;

    (4) a violation of Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act") based on defendants refusal to make reasonable accommodations to plaintiff in her attempt to gain acceptance into the Section 8 housing assistance program and the waiting list;

    (5) a violation of section 504 of the Rehabilitation Act of 1973 based on defendants refusal to make reasonable accommodations to plaintiff in her attempt to gain acceptance into the Section 8 housing assistance program and the waiting list; and

    (6) a violation of the anti-retaliation provisions of the ADA based on Mr. Pena's letter which informed plaintiff she could be reinstated to the waiting list if she provided documentation that her lack of response was "due to circumstances beyond her control," but, after providing a doctor's excuse, defendant Flach informed plaintiff she was not eligible for reconsideration in retaliation for having requested a reasonable accommodation.

As relief, plaintiff asks for: declaratory and injunctive relief to declare plaintiff's rights, remedy the effects of the alleged illegal conduct, and prevent such occurrences in the future; compensatory damages; punitive damages; court costs; and attorney's fees.[13]  Plaintiff's complaint demands a trial by jury.[14]

---

[13] Id. at 10.

[14] Id.

Defendants timely answered[15] and, on May 1, 2006, moved to dismiss plaintiff's claims against Alvarez and Flach based on qualified immunity.[16] On May 15, 2006, plaintiff filed an opposition to the motion to dismiss.[17] After the time for defendants to file a timely reply had expired, the District Judge referred the May 1, 2006 motion to dismiss to the undersigned.[18] On June 8, 2006, the District Judge entered a scheduling Order, which among other things, established a July 28, 2006 deadline to amend pleadings, a September 29, 2006 discovery deadline, and a October 30, 2006 dispositive motion deadline.[19]

### III.  ISSUE PRESENTED

Whether plaintiff's claims against defendant Henry Alvarez in his official capacity and defendant Deborah Flach in her individual and official capacities should be dismissed.

### IV.  STANDARDS

#### A.   Fed.R.Civ.P. 12(b)

Under Rule 12(b)(6), Federal Rules Civil Procedure, plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[20] When

---

[15] Docket no. 8.

[16] Docket no. 11.

[17] Docket no. 12.

[18] Docket no. 13.

[19] Docket no. 6.

[20] Kaiser Aluminum & Chem. Sales, Inc. v. Avondale, 677 F.2d 1045, 1050 (5th Cir.), cert. denied, 459 U.S. 1105, 103 S.Ct. 729 (1982), quoted in Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc., 864 F.Supp. 14, 15 (W.D. Tex.1993), aff'd, 30 F.3d 627 (5th Cir.

considering a motion to dismiss for failure to state a claim, "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff."[21] The United States Supreme Court has elaborated:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be proved consistent with the allegations," Hishon, supra, 467 U.S. at 73, 104 S.Ct. at 2232, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.[22]

**B.     The Nature of § 1983**

Section 1983 does not create any substantive rights, but instead provides a remedy for violations of federal statutory and constitutional rights.[23] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a cause of action under section 1983, a plaintiff's claim for relief must allege facts establishing that: (1) plaintiff has been deprived of a right secured by the Constitution or laws of

---

1994).

[21] Fernandez-Montez v. Allied Pilots Assoc., 987 F.2d 278 (5th Cir. 1993). See also Capital Parks, Inc., 30 F.3d at 629 ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.' Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986).") See also O'Quinn v. Manuel, 773 F.2d 605, 608 (5th Cir. 1985).

[22] Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832-33 (1989).

[23] LaFleur v. Texas Dept. of Health, 126 F.3d 758, 759 (5th Cir. 1997); Jackson v. City of Atlanta, Tex., 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818 (1996).

the United States; and (2) defendant acted under color of state law.[24]  The Fifth Circuit has held that, "section 1983 imposes liability for violations of rights secured by the Constitution, not violations of duties of care arising out of tort law."[25]  Neither violations of duties of care arising out of ordinary tort law nor injuries resulting from a prison official's negligent conduct are actionable under § 1983.[26]

Liability under 42 U.S.C. § 1983 can be predicated upon three possible theories: (1) that plaintiff's injuries are directly attributable to policies of the Defendant which reflect deliberate indifference to plaintiff's constitutional rights;[27] (2) that there existed a "special relationship" between the plaintiff and defendant which created an affirmative duty on the part of defendant to protect the plaintiff from harm;[28] and (3) that the defendant somehow facilitated a "state-created danger."[29]

To succeed on a section1983 claim, a plaintiff must prove a defendant personally was involved in the actions of which he complains, or is responsible for the policy or custom giving

---

[24] Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997), cert. denied, 525 U.S. 822 (1998); Fyfe v. Curlee, 902 F.2d 401, 403 (5th Cir. 1990); Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989).

[25] Lynch v. Cannatella, 810 F.2d 1363, 1375 (5th Cir. 1987).

[26] Daniels v. Williams, 474 U.S. 327, 336, 106 S.Ct. 662, 667 (1986); Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670 (1986).

[27] Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978).

[28] DeShaney v. Winnebago County DSS, 489 U.S. 186, 197, 109 S.Ct. 998, 1004 (1989).

[29] Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 200 (5th Cir.1994).

rise to the constitutional deprivation.[30]  An employer cannot be held liable under section1983 on a <u>respondeat superior</u> theory, that is, "[p]ersonal involvement is an essential element"[31] of plaintiff's case and plaintiff must prove that defendant was personally involved in the actions of which he complains or is responsible for the policy or custom giving rise to the constitutional deprivation.[32] A supervisory official or employer cannot be held liable under section 1983 solely because it employs a tortfeasor.[33]  For a supervisor to be liable under § 1983, the "supervisory official must be personally involved in the act causing the alleged constitutional violation or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights."[34]

---

[30] <u>McConney v. City of Houston</u>, 863 F.2d 1180, 1184 (5th Cir. 1989); <u>Reimer v. Smith</u>, 663 F.2d 1316, 1323 (5th Cir. 1981); <u>Howell v. Tanner</u>, 650 F.2d 610, 615 (5th Cir. 1981), <u>cert. denied</u>, 456 U.S. 918, 102 S.Ct. 775 (1982).

[31] <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983).

[32] <u>See</u> <u>McConney</u>, 863 F.2d at 1184 (5th Cir. 1989); <u>Reimer v. Smith</u>, 663 F.2d 1316, 1323 (5th Cir. 1981); <u>Howell</u>, 650 F.2d at 615.

[33] <u>Monell</u>, 436 U.S. at 691, 98 S.Ct. at 2036; <u>Pierce v. Texas Dept. of Crim. Justice, Inst. Div.</u>, 37 F.3d 1146, 1150 (5th Cir. 1994); <u>Thompkins v. Belt</u>, 828 F.2d 1146, 1150 (5th Cir. 1987).

[34] <u>Monell</u>, 436 U.S. at 691, 98 S.Ct. 2036; <u>Nowell v. Acadian Ambulance Serv.</u>, 147 F.Supp.2d 495, 502 (W.D. La. 2001) (citing <u>Alton v. Texas A & M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999); <u>Cronn v. Buffington</u>, 150 F.3d 538, 544 (5th Cir. 1998); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303-04 (5th Cir. 1987)). In <u>Brown v. Wilson County</u>, No. SA-97-CA-1473-OG, 1999 WL 33290666, at * 12 (W.D.Tex. Mar. 31, 1999), <u>aff'd in part and rev'd in part on other grounds</u>, -- Fed. 3d –, 64 Fed. Appx. 416 (5th Cir. 2003), the District Judge accepted a portion of the Magistrate Judge's report and dismissing plaintiff's claims against the corporate defendants under § 1983 based on <u>respondeat superior</u> or vicarious liability, noting that "<u>Monell</u> involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."  The Court also acknowledged that the Fifth Circuit has indicated in <u>Auster Oil & Gas, Inc. v. Stream</u>, 835 F.2d 597, 602 n.3 (5th Cir. 1988), that "a corporation can be liable under § 1983 if there is a showing of official sanction or 'imprimatur' of the conduct or practice

**C.    Qualified Immunity**

Qualified immunity shields certain public officials performing discretionary functions from civil damage liability if their actions could reasonably have been thought consistent with the rights they are alleged to have violated.[35] Whether a defendant is entitled to immunity from suit as a result of qualified immunity is a two step inquiry: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[36] "Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable."[37] Furthermore, in the Fifth Circuit, the qualified immunity defense involves a shifting burden of proof.[38] The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary

---

at issue." But see Hutchison v. Brookshire Bros., Ltd., 284 F. Supp.2d 459, 473 (E.D. Tex. 2003) ("neither Monell nor its progeny can be read to shield private corporations from vicarious liability when their employees have committed a § 1983 violation while acting within the scope of their employment" because "imposing liability on private corporations affects neither the state's police power nor its ability to regulate its municipalities . . .[and] would seem to keep Congress within its broad power to regulate interstate commerce").

[35] Duckett v. City of Cedar Park, 950 F.2d 272, 279 (5th Cir. 1992).

[36] See Jacobs v. West Feliciana Sheriff's Dept., 2000 WL 1289478 *4 (5th Cir., Sept. 13, 2000) (citing Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998)).

[37] Duckett, 950 F.2d at 280.

[38] Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

authority.[39]  Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.[40]

The Fifth Circuit has encouraged the district courts to require highly fact-specific pleading by a plaintiff in a § 1983 lawsuit who attempts to overcome a plea of qualified immunity.[41] "'[P]laintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense.'  A complaint which raises the likely issue of immunity cannot be cast in 'broad, indefinite and conclusory terms,' but must include detailed facts supporting the contention that the plea of immunity cannot be sustained."[42]

## V.  ANALYSIS

### A.  Summary of Arguments

Defendants have moved to dismiss plaintiff's claims against defendant Alvarez and defendant Flach in their official capacities on the ground that the claims are actually against the Housing Authority which is already named as a defendant.  Defendants also move to dismiss plaintiff's claims against defendant Flach in her individual capacity based on qualified immunity in that Flach acted in good faith and with a reasonable belief her actions complied with the

---

[39] Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir. 1982), cert. denied, 460 U.S. 1012, 103 S. Ct. 1253 (1983).

[40] Id.; Whatley v. Philo, 817 F.2d 19, 20 (5th Cir. 1987); United States v. Burzynski Cancer Research Inst., 819 F.2d 1301, 1310 (5th Cir. 1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1026 (1988).

[41] Hick v. Bexar County, Tex., 973 F. Supp. 653, 673 (W.D. Tex., 1997), aff'd, 137 F.3d 1352 (5th Cir. 1998).

[42] Hick, 973 F. Supp. at 673 (citations omitted); see also Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996).

constitution and laws of the United States and Texas nor did any of her actions violate a clearly established statutory or constitutional right of which a reasonable person would have known.

Plaintiff's response opposes dismissal of the individual capacity claims against Flach based on qualified immunity, arguing that the Housing Authority's decisions to deny plaintiff (a) an opportunity to be heard regarding the decision to remove her name from the Section 8 waiting list or (b) a reasonable accommodation and reinstate her name in its prior position on the waiting list when it was shown plaintiff did not respond to a request for information and attend her appointment due to a disability each violated clearly established constitutional and regulatory rights, including rights to notice and an opportunity to contest an adverse housing decision and were unreasonable. Plaintiff's response does not address the request that official capacity claims be dismissed as redundant of the claims against the Housing Authority.

### B. <u>Qualified Immunity</u>

At this stage of the litigation, taking as true all allegations in the complaint, the Court cannot conclude that defendant Flach has established plaintiff's claims must be dismissed based on qualified immunity. Although defendants' motion contains a relatively detailed summary of case law discussing the standards of qualified immunity, it does not contain any analysis of how those standards, when applied to the allegations of the complaint, justify dismissal of any of plaintiff's claims. Stated differently, the motion does not apply the law to the facts alleged in the complaint to show why each of plaintiff's six causes of action are barred by qualified immunity. On the other hand, plaintiff's response presents arguments addressing United States Supreme Court case regarding a right to notice and a right to contest disputed factual matters before terminating a

person's welfare subsidy, including, by analogy, termination from a housing assistance program.[43]

The response also cites the decision of the United States Court of Appeals for the Sixth Circuit which held that

> Due process requires that an **applicant** for the Section Eight existing housing program be able to request an informal hearing if he has been denied eligibility based on an outstanding claim **for alleged past rent or damages**. Written notice to the applicant must set forth the allegations on which the denial was based and the method for requesting a hearing. At the hearing the applicant or his attorney, if he chooses to have one, must have an opportunity to make an oral presentation. A decision must be made within a reasonable time of the hearing and the applicant must be advised of the reasons for the decisions. This informal hearing will impose no burden on defendants. HUD already requires local housing authorities to inform an applicant denied eligibility that he is entitled to an informal hearing upon request. 24 C.F.R. § 882.209(f) (1983). **For present participants** in the program, we conclude that due process requires a hearing prior to termination or denial of recertification. **In addition, the nature of the interest of the present participants necessitates somewhat more extensive procedures than those required for applicants.**[44]

The procedures to be afforded a previously terminated applicant are at issue, as well as the obligation of the Housing Authority to reinstate plaintiff's family to its prior position on the waiting list based on an accommodation for plaintiff's disability and, possibly, the obligation of the Housing Authority to reinstate plaintiff's family to its prior position on the waiting list given that it placed plaintiff on the waiting list notwithstanding an alleged ineligibility "for reconsideration in the program" until five years have elapsed. Based on the Court's review of the record, at this stage of the litigation, the Court cannot conclude that any of plaintiff's claims against defendant

---

[43] Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017-18 (1970).

[44] Davis v. Mansfield Metropolitan Housing Authority, 751 F.2d 180, 185 (6th Cir. 1984) (citations omitted) (emphasis added).

Flach, if the facts alleged in the complaint are proved to be true, will be barred by qualified immunity.

**C.     Official Capacity Claims**

Defendants' motion to dismiss also seeks the dismissal of the claims against defendant Alvarez and defendant Flach in their official capacities on the ground, in effect, they are redundant as a matter of law, that is, because such claims are the same as a suit against the Housing Authority itself.  In other words, if plaintiff were to prevail in the official capacity claims any relief would be ordered against the Housing Authority, not either individual.  Plaintiff does not present argument or authority opposed to the request.

It has been repeatedly held that suits against state officials in their official capacity are the same as suits against the State.  For example, in Hafer v. Melo the United States Supreme Court stated:

> Suits against state officials in their official capacity . . . should be treated as suits against the State.  Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation . . . . the real party in interest in an official-capacity suit is the governmental entity and not the named official.[45]

In plaintiff's suit, naming Henry Alvarez and Deborah Flach in their official capacities, is the same as suing the Housing Authority.  Therefore, removing the official capacity claims against these individuals would not change plaintiff's causes of action.

---

[45] 502 U.S. 21, 25, 112 S. Ct. 358, 361-62 (1989) (citations omitted); see also Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985) ("[A]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Hudson v. City of New Orleans, 174 F.3d 677, 680 (5th Cir.1999); Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996) ("Brooks's suit against [Sheriff] in his official capacity is treated as a claim against . . .[the] County.").

## VI. RECOMMENDATION

Based on the foregoing analysis, it is recommended that defendants' "motion to dismiss for qualified immunity as to individual defendants Henry Alvarez and Deborah Flach"[46] should be **GRANTED in part** and plaintiff's claims against defendants Alvarez and Flach in their official capacities should be dismissed; otherwise defendants' motion to dismiss should be **DENIED**, including, the request that plaintiff's claims against defendant Flach in her individual capacity be dismissed.  If this report and recommendation is accepted, no claim would remain against defendant Alvarez who will be dismissed from the case, and all claims will remain pending against defendant Housing Authority and defendant Flach in her individual capacity.

## VII.  INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in  28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within 10 days after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections

---

[46] Docket no. 11.

must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a de novo determination by the District Court.[47] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[48]

**SIGNED** and **ENTERED** this 9th day of June, 2006.

_____
**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[48] Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).